In the Matter of the Guardianship of Estella R. Warlick, an incompetent person.

Estella R. WARLICK, Appellant,

v.

June STEVENSON, Patricia Carolyn Spencer, Jerry G. Doolen, and Yonne McDaniel, Appellees.

No. 49266.

Supreme Court of Oklahoma.

Nov. 15, 1977.

DAVISON, Justice:

On December 16, 1975, the District Court of the Second Judicial District in Greer County, issued an order appointing Yonne P. McDaniel an attorney and resident of Greer County, as the guardian of Estella R. Warlick, found by that court to be an incompetent person. The Petition for the Appointment of a Guardian was filed by June Stevenson, Patricia Carolyn Spencer, and Jerry G. Doolen, children of Ms. Warlick.

Ms. Warlick appealed from the appointment of said guardian, urging four errors of law:

1. That the proponents of said guardianship failed to get proper service upon Ms. Warlick, and that the trial court erred in ruling that service was proper.

2. That the trial court erred in ruling that Ms. Warlick was a resident of Greer County, Oklahoma, for in fact, she is a resident of the State of Texas.

3. That the trial court erred in ruling that it had obtained jurisdiction over the person of Estella R. Warlick.

4. That the evidence presented by the proponents of the guardianship was insufficient to establish that Ms. Warlick was incompetent, and that the trial court erred in ruling that such evidence was sufficient and in appointing a guardian over the person and property of Estella Warlick.

Ms. Warlick's appeal was assigned to the Court of Appeals, Division I, and that Court handed down an opinion holding that the order appointing a guardian for Ms. Warlick was void as Ms. Warlick was not properly served with notice of the guardianship proceeding, and accordingly the trial court lacked jurisdiction over her person. In so ruling, the Court of Appeals, relying on *Colby v. Jacobs*, 179 Okl. 170, 64 P.2d 881 (1937) and *In re Mize's Guardianship*, 193 Okl. 164, 142 P.2d 116 (1934), held that the provisions of 58 O.S.Supp.1972 § 851,[1] which

James R. Moore, Jr., Hollis, for appellant.

James P. Garrett, Mangum, for appellees.

1. 58 O.S.Supp.1972 § 851 provides:
   "When it is represented to the court upon verified petition of any relative or friend, that any person is insane, or from any cause mentally incompetent to manage his property, the court shall cause notice to be given to the

provide for notice to the alleged insane or incompetent person in guardianship proceedings, require that personal service of the notice is mandatory. In the case before us, the alleged incompetent person, Ms. Warlick, was served with the a copy of the notice via registered mail, return receipt requested, and the record indicates that she in fact signed the return receipt. The question thus before the trial court, and subsequently the Court of Appeals, was:

Whether the notice provisions of 58 O.S.Supp.1972 § 851, with respect to notice to the ward, are complied with when the potential ward receives notice of the guardianship proceeding via registered mail, return receipt requested, by actually receiving and signing for the notice by signing the postal return receipt form?

The Court of Appeals held that such notice does not satisfy the statutory requirement. We disagree, and for that reason grant certiorari, reversing the holding of the Court of Appeals, and reinstating and affirming the order of the trial court.

In the principal case relied upon by the Court of Appeals, *Colby v. Jacobs*, supra, we did in fact hold that service by mail did not meet the notice requirement as ordered by the trial court in the guardianship proceedings involved. However, the "service by mail" in that case differs materially from the service in the case before us. In the *Colby* case, the trial court *ordered that notice be "personally served upon Lula O. Colby"*, and service was attempted by the sheriff who *left a duly certified copy of the notice at Ms. Colby's residence with her husband, and not with her.* The court in that case defined "personal service" as follows:

"Personal service ordinarily means *actual delivery of process to the one to be served in person*, and does not include

service by leaving a copy at the usual place of residence."

In the case now before us, notice was not merely left at Ms. Warlick's usual place of residence, rather the notice was *personally delivered* to Ms. Warlick by the mail carrier, as reflected by Ms. Warlick's signature on the return receipt requested postal form. Because notice of the guardianship proceeding was personally delivered by the postal employee to Ms. Warlick, we hold that she was "personally served", and that the requirements of 58 O.S.Supp.1972 § 851 regarding notice to the potential ward were satisfied.

In so holding, we note that 58 O.S.Supp. 1972 § 851 makes no provision regarding how notice is to be served upon the alleged incompetent or insane individual. We also note that in both cases referred to above, *Colby v. Jacobs, supra,* and *In re Mize's Guardianship, supra,* the trial courts, in ordering that notice be served upon the alleged incompetent or insane individual, specifically ordered that personal service be made. Additionally, we take note of the fact that in the case before us, the notice and the appropriate return receipt requested were mailed by the Court Clerk of Greer County, and not by any of the interested parties and/or their attorneys.

We next consider whether the trial court had jurisdiction over the person of Estella R. Warlick, so as to permit it to appoint a guardian over her *person* as well as her *estate*. Such jurisdiction is dependent upon the alleged insane or incompetent individual being domiciled within the State of Oklahoma. At trial, Ms. Warlick filed a Special Appearance, Motion to Quash, and Objection to Jurisdiction, which were all eventually overruled. In attempting to

---

supposed insane or incompetent person and shall cause notice, by any means deemed proper to the judge, to be given to some known near relative of such alleged insane or incompetent person who is not the petitioner, of the time and place of hearing the case, not less than five (5) days before the time so appointed, and such insane or incompetent person, if able to attend, must be produced before the court on the hearing. The relative to be given such notice shall be designated by the judge. If there be no known relative, near or remote, or if the whereabouts of all relatives be unknown or unascertainable from available sources, the petition shall so allege."

prove to the court that she was not domiciled in Oklahoma, but rather was domiciled in Texas, Ms. Warlick, through her attorney, introduced evidence that for the past six months she lived in Lubbock, Texas—at times with her daughter, Mary Virginia Hunt, and at other times in a convalescent home. Ms. Hunt, who is a resident of Lubbock, Texas, testified to having moved bank accounts and savings accounts of her mothers to financial institutions in Lubbock and to having the authority to sign checks in those institutions for her mother.

Countering this testimony, was testimony by the petitioners that Ms. Warlick and her husband both resided in Mangum, Oklahoma, that they both had lived there for the majority of their lives; that Ms. Warlick made frequent *visits* to her daughter's Texas home; that Mr. Warlick, until the time of his death, understood that his wife would be returning from her visit in Lubbock and; that Ms. Warlick owned both real and personal property in Mangum, including the joint ownership of the home place where they lived for many years and in which homestead exemption had been claimed. The record also shows that Ms. Warlick was taken to Lubbock on April 12, 1975, by Ms. Hunt, with whom she stayed for thirty days. After the first thirty days, however, Ms. Hunt placed Ms. Warlick in a rest home where she remained until after the death of her husband which occurred on September 29, 1975. Ms. Warlick was 77 years of age at the time of the death of her husband, who had been physically impaired for sometime prior to his death. Additionally, some of the testimony suggested that Ms. Hunt may have been exerting undue pressure on her mother to remain in Lubbock—the testimony indicated that large cash gifts, amounting to over $40,000.00 were made to Ms. Hunt, and that Ms. Hunt may have been responsible for making it almost impossible for any of her brothers and sisters to visit their mother, when Ms. Hunt was aware any of her siblings would be in the Lubbock area. It was also suggested, in argument, that based on these facts, the possibility existed that Ms. Warlick was being kept in Texas, either against her will or through undue influence.

■ In light of this contradictory evidence, and in light of the legal presumption that a domicile once established is presumed to continue until a new one is established,[2] the trial court's holding that Ms. Warlick was domiciled in Oklahoma, was not clearly against the weight of the evidence. This being the case, we hold that the trial court properly exercised its jurisdiction over the *person* and *estate* of Estella R. Warlick.

■ Lastly, we consider the contention that the evidence presented by the proponents of the guardianship was insufficient to establish that Ms. Warlick was incompetent. Because the evidence adduced at trial indicated that (1) Ms. Warlick was no longer conducting much of her personal business, and (2) demonstrated that she was not always fully cognizant of her surroundings—on one occasion while spending a day visiting with one of her daughters, Ms. Warlick, according to her daughter's testimony, was only able to recognize her part of the time and at other times had no idea who she was, we hold that there was sufficient evidence to hold that Ms. Warlick was incompetent.

For the above stated reasons, we hold that the trial court properly exercised its jurisdiction over the person and estate of Estella R. Warlick, and that the order appointing Oklahoma attorney, Yonne P. McDaniel, as Ms. Warlick's guardian, accordingly must be affirmed.

PETITION FOR CERTIORARI GRANTED; OPINION OF THE COURT OF APPEALS VACATED; ORDER OF THE TRIAL COURT AFFIRMED.

All Justices concur.

---

**2.** *McKiddy v. State*, Okl., 366 P.2d 933 (1962), and *Jones v. Burkett*, Okl., 346 P.2d 338 (1959).