2008 OK CIV APP 62

In the Matter of the GUARDIANSHIP OF Loyce Juanita PARKER, an incapacitated person.

Linda S. Jones, Appellant,

v.

Alvin Edward Parker, Jr., Appellee.

No. 104,828.

Court of Civil Appeals of Oklahoma, Division No. 3.

Feb. 15, 2008.

Rehearing Denied March 20, 2008.

Certiorari Denied May 19, 2008.

Approved for Publication by Order of the Supreme Court May 19, 2008.

Kent P. Sullivan, Leach, Sullivan, Sullivan & Watkins, LLP, Duncan, OK, for Appellant.

Phillip R. Scott, Waurika, OK, for Appellee.

James H. Ivy, Waurika, OK, for Loyce Juanita Parker, Proposed Ward.

BAY MITCHELL, Vice–Chief Judge.

¶ 1 This appeal involves competing guardianship proceedings filed in neighboring states regarding the same proposed ward. Appellant Linda S. Jones (Daughter) appeals the June 7, 2007, order of the District Court of Jefferson County, Oklahoma, determining Loyce Juanita Parker (Mother) to be an Oklahoma resident incapacitated by reason of dementia and appointing Appellee Alvin Edward Parker, Jr. (Son) general guardian of Mother's person and property. Daughter argues the Oklahoma trial court did not have jurisdiction because Daughter was the first to apply for appointment as Mother's guardian, having initiated a proceeding in the County Court of Wilbarger County, Texas several weeks before Son filed for guardianship in Oklahoma. We find the District Court of Jefferson County, Oklahoma properly exercised jurisdiction over this action

and affirm its decision appointing Son as Mother's general guardian.

*Facts and Procedural History*

¶ 2 Mother has lived in Jefferson County, Oklahoma almost her entire life. She was born in Addington, Oklahoma in 1919. After attending high school in Claypool, she spent the next seventy years living on a cattle ranch east of Waurika, with husband Alvin Edward Parker, Sr. (Father).

¶ 3 Mother and Father formed a trust in 1991 (the Trust), assigning their personal and real property to Father as Trustee. The real property so transferred comprised several large areas of ranch land in Jefferson County. The stated intent of the Trust was to relieve Mother and Father "of the responsibility of managing the trust assets in the event that they become incompetent." The Trust provides Son shall serve as Successor Trustee upon Father's death, resignation, or inability to serve. All four of Mother and Father's children [1] signed the "Acceptance" page of the Trust, demonstrating their assent to its terms and conditions.

¶ 4 When Father died May 20, 2006, Son assumed the role of Successor Trustee. According to the Trust terms:

during any period in which the Settlors [Mother and Father] are, in the opinion of the Trustee, incapable of managing their own affairs, the Trustee may, in his discretion, pay to or use for the benefit of the Settlors, so much of the income and principal of the trust as the Trustee determines to be required for their support, comfort, and general welfare, in the manner of living in which they are accustomed, or for any other purpose for which the Trustee believes to be in the best interest of the Settlors.

In keeping with this section, Son has used funds from the Trust to pay Mother's rent and other living expenses. In addition to such distributions, Mother's assets include monthly Social Security checks and her immediate personal belongings.

---

1. In addition to Son and Daughter, Mother has two other living children, daughters Polly Ward and Deborah Boring.

¶ 5 Shortly after Father's death, Mother toured the Heartland Plaza assisted living facility (Heartland) in Duncan, Oklahoma with Son and at least one of her three daughters. The family met with Heartland's administrator who told them an apartment was available. The next day, they decided Mother should take the apartment. Unfortunately, by that time, the vacancy had been filled. At Daughter's suggestion, the family concluded Mother should stay at the Alterra Sterling House assisted living facility (Alterra) near Daughter's home in Vernon, Texas until another apartment became available at Heartland. Mother arrived in Texas June 11, 2006 and stayed with Daughter for about two weeks before moving to her new accommodations at Alterra.

¶ 6 Approximately four months later, Son learned an apartment would soon be available at Heartland. He called the Alterra business office October 30, 2006, and left a message saying he planned to move Mother out of the facility in a few weeks' time. In response, an Alterra employee wrote a letter to Son dated November 1, 2006, acknowledging receipt of his October 30, 2006 telephone message but reminding him thirty days' written notice was required to terminate Mother's residency agreement.

¶ 7 One month later, on December 1, 2006, Daughter filed an application in County Court of Wilbarger County, Texas (County Court), seeking appointment as permanent guardian of Mother's person and estate. Daughter attached to her application a letter written by Bryan Wieck, M.D., a Texas physician, who had examined Mother November 9, 2006. In it, Dr. Wieck stated Mother suffers significant cognitive defects due to progressive dementia that render her incapable of making decisions. The County Court appointed a Texas lawyer to act as Mother's "attorney *ad litem*" in the case.

¶ 8 In his response in opposition to Daughter's Texas guardianship application, Son informed the County Court Mother's permanent domicile and residence is in Oklahoma and her stay in Wilbarger County only temporary. Consequently, he argued, any guardianship of Mother should issue in Oklahoma, not Texas.

¶ 9 On December 16, 2006, Son helped Mother move out of Alterra and into an apartment at Heartland in Duncan, Oklahoma. He then petitioned the District Court of Jefferson County (the Oklahoma trial court), to appoint him special (temporary) guardian of Mother's person and estate. Without knowledge of the competing action Daughter had initiated in Texas, the Oklahoma trial court appointed Son special guardian of Mother's person and estate December 19, 2006. In so doing, it found Mother appears to be impaired by reason of age and infirmity, and that her health, safety, and financial resources would be in imminent danger if a special guardian were not appointed. The Oklahoma court further determined both Mother and Son to be residents of Jefferson County and found Son qualified to serve as special guardian. Waiving the bond requirement, it ordered Son's appointment as special guardian to remain in force for thirty days. Its December 19, 2006 Order appointing Son special guardian of Mother's person and estate was the first order to issue in either Oklahoma or Texas appointing a guardian of any sort for Mother. On December 21, 2006, Son filed a new petition, this time for appointment as general (permanent) guardian of Mother's person and estate, which the Oklahoma trial court set for hearing January 11, 2007.

¶ 10 Also after moving Mother to Heartland, Son twice amended his response in the Texas case, arguing Mother's return to Oklahoma and his appointment as special guardian of her person and estate rendered the Texas action moot. He also applied for appointment as Mother's permanent guardian in Texas. At the December 27, 2006 hearing in the Texas case, the County Court granted Son's motion to transfer the matter to the 46th District Court of Wilbarger County, Texas (the Texas trial court).

¶ 11 Daughter then applied for temporary guardianship (pending resolution of her application for permanent guardianship) of Mother's person only (not her estate) in the Texas trial court January 8, 2007, which it granted the next day. In so doing, the Texas trial court found Son's actions in filing a competing guardianship proceeding in Okla-

homa were "designed to attempt to defeat jurisdiction in this Court." It ordered Son to return Mother to its jurisdiction and deliver custody of Mother to Daughter by January 10, 2007. Mother, however, refused to leave Oklahoma. Daughter's attorney advised the Texas trial court Mother "will not voluntarily go to Texas with my client, as provided in your Order."

¶ 12 The Oklahoma trial court held its first hearing on Son's general guardianship petition January 11, 2007. Daughter did not file her response to Son's application until the morning of the hearing. In it, she moved to dismiss Son's general guardianship application; vacate the special guardianship; require an accounting; and strike the scheduled hearing. She also asked for a continuance. Daughter informed the Oklahoma court she had been the first to apply for appointment as Mother's guardian, having done so December 1, 2006 in Wilbarger County court at a time when Mother was still living in Texas. The Oklahoma court decided to limit the scope of the hearing to the question of Mother's domicile as it relates to jurisdiction.

¶ 13 During the January 11 hearing, after informing the court she had spent virtually her entire life in Jefferson County, Oklahoma, Mother testified as follows:

Q [Mr. Ivy]: Okay. Have you ever considered any other state as your home?

A [Mother]: No. I've always wanted to live in Oklahoma.

Q. Do you remember going to Texas and living in Texas for a while?

A: Well, I went for—to visit, and I stayed two or three weeks, but I—I didn't intend to stay that long, but I did. And it was just for a visit.

Q: Did you ever want to come back to Oklahoma?

A: Indeed, I came back.

Q: And how did you come back? Who did you call, if anybody?

A: I called my son and told him to come get me, and he did.

Q: And you've been here ever since?

A: Uh-huh.

* * *

Q [Mr. Sullivan]: Okay. Now, when you—did you talk to your son?

A [Mother]: Yes, I did often. And then I decided I wanted to come home, so I called him and told him to come get me; and he did.

* * *

Q [Mr. Sullivan]: Now, did you just want to come home and visit for a little while?

A [Mother]: No. I just wanted back in Oklahoma. I like Oklahoma and wanted to live in Oklahoma, and I wanted Eddie to be my guardian; and he is. My son, Eddie Parker.

Daughter then testified that during Mother's stay at Alterra, Mother expressed her desire to "go home" on several occasions:

Q [Mr. Sullivan]: During that time did she ever tell you she wanted to go back to what she calls home?

A [Daughter]: Yes. She said she wanted to go home several times.

Q: And what did you understand that to mean?

A: Home was, she either wanted to go to her rent house [in Waurika, Oklahoma], or she wanted to go home, home being the ranch [east of Waurika, Oklahoma]. The rent house is here in town.

Daughter's counsel acknowledged all of Mother's assets are held in trust in Oklahoma. At the close of evidence, the court took under advisement Daughter's motions to vacate the special guardianship and dismiss Son's application for general guardianship until it ruled on jurisdiction. It instructed Daughter's counsel "if you have evidence that you wish to present in relation to jurisdiction, you're to notify the Court, set it for hearing, and we'll proceed with that because I do not want to cut somebody short without notice that what we were trying here today was jurisdiction."

¶ 14 Son renewed his special guardianship application January 25, 2007 and requested a restraining order against anyone who might try to remove Mother from Oklahoma. The Oklahoma trial court immediately granted

Son's petition and issued a restraining order. Having heard nothing further from Daughter regarding jurisdiction, the Oklahoma trial court set the issue of permanent guardianship for hearing February 16, 2007. Daughter again moved for a continuance on February 8, 2007 and on February 12, 2007 filed a pleading entitled, "This Court Should Defer Further Action Due to the Doctrine of Comity." The next day, Daughter initiated an emergency application to assume original jurisdiction and petition for writ of prohibition in the Oklahoma Supreme Court and moved the Oklahoma trial court for a discretionary stay pending the outcome of the Supreme Court proceedings and determination of jurisdictional issues.

¶ 15 While all this was occurring in Oklahoma, the Texas trial court, upon Daughter's motion, held Son in contempt for failing to appear at a February 8, 2007 hearing on his compliance with its orders to deliver custody of Mother to Daughter and return Mother to the jurisdiction of Texas. The Texas trial court instructed the Wilbarger County District Clerk's Office to issue a Writ of Capias directing any Texas sheriff or constable to take Son into custody and commit him to jail in Wilbarger County. After a hearing, the Texas trial court appointed Daughter permanent guardian of Mother's person and estate March 8, 2007.

¶ 16 Back in Oklahoma, the Supreme Court assumed original jurisdiction of the case and, on March 12, 2007, issued a writ commanding the Oklahoma trial court to decide Daughter's motion to dismiss before considering the merits of the general guardianship. At the March 28, 2007 hearing, counsel for Daughter informed the Oklahoma trial court "the only property [Mother] owns is a bank account in Stephens County, [Oklahoma]." The Oklahoma trial court denied Daughter's motion to dismiss on the record and ruled it would hear testimony to determine the need for a general guardian of Mother's person and estate April 12, 2007. Daughter again moved for a discretionary stay. On April 2, 2007, Son filed a third petition for appointment of special guardian and second motion for restraining order against Daughter. The Oklahoma trial court

immediately granted both motions. It formally denied Daughter's motion to dismiss by order dated April 5, 2007. The Oklahoma Supreme Court granted Daughter's motion for emergency stay in part April 11, 2007, allowing the hearing on jurisdiction to proceed in the Oklahoma trial court but staying the hearing on the general guardianship until further order.

¶ 17 Thus, the scope of the April 12, 2007 hearing was limited to jurisdiction. Mother's physician testified he first diagnosed her with progressive dementia in June 2000 and stated with reasonable medical certainty that in June or July of 2006, Mother did not have sufficient mental capacity to change her domicile from Oklahoma to Texas. Psychological testing of Mother undertaken August 7, 2006 further revealed she suffered from severely impaired memory and cognitive functioning; serious deficits in short-term memory; and mild to moderate deficits in executive functioning and abstract thinking, which include decision-making and problem-solving skills. By order April 19, 2007, the Oklahoma trial court held it has exclusive jurisdiction of the guardianship because Mother's domicile is in Oklahoma. The Oklahoma Supreme Court denied Daughter's second application to assume original jurisdiction May 7, 2007.

¶ 18 At the May 30, 2007 hearing on Son's petition for appointment of general guardian, counsel for Son notified the Oklahoma trial court that Daughter and Daughter's husband had tried to remove Mother from Heartland May 24, 2007 and the police had been called. He further reported that the following day, Daughter and her husband walked into the building with Heartland employees during the morning shift change, removed Mother from her apartment, and drove her to Texas where Mother has remained ever since. Not surprisingly, neither Mother nor Daughter attended the May 30, 2007 general guardianship hearing. By order dated June 7, 2007, the Oklahoma trial court appointed Son general guardian of Mother's person and estate, finding Mother and Son are Oklahoma residents, Mother is incapacitated by dementia, and Son is quali-

fied to serve as guardian. It is from that order Daughter filed the present appeal.[2]

■ ¶ 19 On appeal, Daughter first argues Oklahoma does not have jurisdiction over Mother because Son brought Mother to this State in an attempt to defeat the jurisdiction of the Texas court. Daughter cites *Commercial Bank & Trust Co. v. Dist. Court of the Fourteenth Judicial Dist. in and for Tulsa County*, 1980 OK 3, ¶ 6, 605 P.2d 1323, 1324–25, for the proposition that "[p]ersonal service is void if it is obtained by inveigling or enticing the person to be served into the territorial jurisdiction of the court by means of fraud and deceit, actual or legal, or by trick or device." We reject Daughter's argument for several reasons. First, the record evidence shows Son's intent to return Mother to Oklahoma pre-dated Daughter's Texas guardianship application by at least thirty days. Second, Mother's own testimony indicates it was she who implored Son to take her back to Oklahoma, not the other way around. Daughter failed to present any evidence Son enticed or tricked Mother into returning to her home state. Third, even if Son were aware that respecting Mother's emphatic wish to move back to Oklahoma also would serve to defeat the Texas courts' jurisdiction over the guardianship, such would not invalidate personal service of Mother *in Oklahoma* because there is no indication Mother was in this State as the result of any force or influence apart from her own free will.

■ ¶ 20 Citing *Smith v. Shelter Mut. Ins. Co.*, 1994 OK 5, ¶ 13, 867 P.2d 1260, 1267, Daughter next insists the March 8, 2007 order of the Texas trial court appointing her permanent guardian of Mother's person and estate is a final judgment entitled to full faith and credit in Oklahoma. We disagree. In *Smith*, competing lawsuits stemming from a fatal automobile accident were filed in Oklahoma and Arkansas. After the Arkansas court granted the insurance company's motions for declaratory and summary judgment,

the insurance company moved for summary judgment in Oklahoma, requesting the court give full faith and credit to the Arkansas decision and dismiss the estate representative's claim against it. After a hearing, the Oklahoma trial court granted the insurance company's motion and dismissed the estate representative's claim with prejudice. On appeal, the Supreme Court of Oklahoma held:

> Where a similar controversy between the same parties is pending in a separate jurisdiction, each forum is generally free to proceed to a judgment. The *first judgment* precludes the sister jurisdiction from determining issues that were or could have been raised in the first action. The United States Constitution requires that *full faith and credit be accorded a final judgment of a sister state court having jurisdiction of the parties and of the issues determined.* The local law of the state where the judgment is rendered determines the issues decided and whether a judgment is on the merits.

*Id.* ¶ 8, 1264–65 (emphasis added).

¶ 21 Pursuant to *Smith*, the Oklahoma trial court's December 19, 2006 order appointing Son special guardian of Mother's person and estate should have precluded Texas from proceeding with Daughter's guardianship application because it was the first judgment to address the subject matter in controversy. The fact that Daughter was the first to apply for guardianship is immaterial.

■ ¶ 22 Moreover, according to *Smith*, the Oklahoma court would be obligated to accord full faith and credit to the March 8, 2007 order only if the Texas trial court had "jurisdiction of the parties and of the issues determined." *Id.*, ¶ 8, 867 P.2d at 1265. Under Texas law,

> a proceeding to appoint a guardian of the estate of a nonresident is primarily a proceeding in rem, jurisdiction of which depends not on the residence of the insane person but on the location of the property.

2. Generally, a judgment in a guardianship action will not be disturbed unless it is clearly against the weight of the evidence or contrary to law. *Gould v. Smith*, 1965 OK 112, ¶ 0, 405 P.2d 82, 83 (*Syllabus by the Court* no. 2). However,

whether the trial court had jurisdiction over the parties and subject matter are legal questions which we review *de novo*. *Kluver v. Weatherford Hosp. Authority*, 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084.

*Henderson v. Shell Oil Co.,* 202 S.W.2d 492, 495 (Tex.Civ.App.1947). The Oklahoma trial court cited *Henderson* in its order denying Daughter's motion to dismiss, reasoning:

> For efficiency and to avoid conflict, courts usually appoint a guardian of the person along with the guardian of the property. The guardian of the property must be appointed in the state where the property is located. A sister state has no jurisdiction to control property located in this state. Only Oklahoma has jurisdiction over the real estate and trust located in this state. A hearing on jurisdiction must be conducted in this state if there is to be a guardian of the estate.

We agree. The Texas trial court did not have jurisdiction over Daughter's guardianship of Mother's property because the entirety of Mother's estate lies in Oklahoma.

¶ 23 The Texas trial court did not have jurisdiction over Daughter's application for appointment as guardian of Mother's person, either. Under Texas law, "[a] proceeding for the appointment of an incapacitated person shall begin in the county where the incapacitated person resides or is located on the date the petition is filed, or where his principal estate is situated." Tex.Prob.Code Ann. § 130N (Vernon Supp.1990). The trial court must determine the proposed ward's "alleged residence is (a) a fixed place of abode within the incapacitated person's possession, *(b) the incapacitated person occupies or intends to occupy the abode consistently over a substantial period of time, and (c) the abode is permanent rather than temporary.*" *Guardianship of B.A.G.,* 794 S.W.2d 510, 513 (Tex.App.-Corpus Christi,1990) (emphasis added), citing *Petty v. Petty,* 592 S.W.2d 423, 427 (Tex.Civ.App.-Dallas 1979). The entirety of the record evidence, including Daughter's own admissions, demonstrates Mother's stay in Vernon, Texas was temporary and Mother did not intend to remain there permanently. When the proposed ward is a non-resident, a Texas court may grant a guardianship only "when such person has an estate located within the State of Texas, and it is made to appear that necessity exists for such guardianship." *In re Burges' Estate,* 148 S.W.2d 903, 904 (Tex.

Civ.App.1941). It is undisputed Mother does not have an estate in Texas.

¶ 24 Furthermore, under Oklahoma law, "to effect a change of residence or domicile, there must be an actual abandonment of the first domicile, coupled with an intention not to return to it." *Jones v. Burkett,* 1959 OK 221, ¶ 14, 346 P.2d 338, 341; *see also Warlick v. Stevenson,* 1977 OK 217, 571 P.2d 843. Indeed, a "temporary absence with continuous intent to return will not deprive one of his residence even though it is over a period of time." *Jones,* ¶ 16, 346 P.2d at 341. Mother's intent to return being supported by overwhelming evidence, Daughter failed to overcome the presumption that Mother's domicile remained at all times in Oklahoma. Accordingly, the Texas trial court did not have jurisdiction over Daughter's application for guardianship of either Mother's person or her estate. The Oklahoma trial court properly declined to accord full faith and credit to the Texas trial court's order appointing Daughter Mother's permanent guardian.

¶ 25 For her third contention of error, Daughter insists the Texas trial court properly exercised jurisdiction over this matter. For the reasons discussed above, we reject this argument on appeal.

¶ 26 Daughter next insists the Oklahoma trial court abused its discretion in failing to apply the doctrine of comity to stay Son's guardianship action pending the outcome of the Texas appeal. "Judicial comity is not a rule of law, but one of practical convenience and expediency based on the theory that *when a court has jurisdiction,* its jurisdiction will not be interfered with during the continuance of its jurisdiction by another court of a foreign jurisdiction unless it is desirable that one give way to the other." *Clampitt v. Johnson,* 1961 OK 8, ¶ 23, 359 P.2d 588, 592 (emphasis added). "Under the doctrine of comity, a court should ordinarily decline to entertain jurisdiction of a matter where there is an action already pending in a *convenient and competent forum* of another state to which the parties may apply and where exercise of jurisdiction by second court might lead to confusion and conflicting orders." *Moody v. Branson,* 1943

OK 142, ¶ 0 (*Syllabus by the Court* no. 4), 192 Okla. 327, 136 P.2d 925, 926 (emphasis added). Because the Texas trial court did not have jurisdiction over the guardianship action, the doctrine of comity did not apply.

¶ 27 Even if the Texas trial court did have jurisdiction over the guardianship, the Oklahoma trial court properly made an exception to the general rule of comity and assumed jurisdiction to determine Son's application on the merits due to the unusual circumstances existing. *See Clampitt,* ¶¶ 36–37, 359 P.2d at 594 (holding where the welfare of a child is in jeopardy or some other unusual circumstance exists, Oklahoma courts should make an exception to the general rule of comity and assume jurisdiction to determine a custody application on the merits despite the existence of a valid and binding judgment of a foreign court). One of the unusual aspects of this case is the existence of the Trust, a contract formed in Oklahoma prior to the diagnosis of Mother's dementia, which involves Oklahoma property and to which all Mother's children, including Daughter, are signatories. The Trust provides that in the event of Mother's incapacity, Son, as Successor Trustee, may use as much of the income and principal of the Trust as necessary for Mother's support, comfort, and general welfare, and to maintain her in the manner of living to which she is accustomed. The Texas trial court granted Daughter "a full guardianship of [Mother's] person and estate ... with all of the rights, duties, powers and limitations granted to a guardian by law" and declared she "has full authority over [Mother's] person and estate." Son's duties as Successor Trustee to use his unfettered discretion to provide for Mother's best interests are in direct conflict with a guardianship of Mother's person and estate by someone in a foreign state under the direction of a non-Oklahoma court. In light of this circumstance, the Oklahoma trial court properly refused to dismiss Son's petition on the basis of comity.

¶ 28 For her fifth argument on appeal, Daughter declares the Oklahoma trial court erred in appointing Son guardian of Mother's person because Daughter is meeting the essential requirements for Mother's physical health and safety. We will not entertain this argument being raised for the first time on appeal. Daughter had the opportunity to present such evidence to the Oklahoma trial court at its hearing on general guardianship May 30, 2007. It is not surprising that, having removed Mother to Texas several days earlier in apparent violation of the restraining order against her, Daughter failed to attend the hearing. Her counsel was present, however, and although he did insist a guardian of Mother's person was unnecessary, he based this argument on the existence of the Texas trial court's order appointing Daughter permanent guardian of Mother's person and estate, not on an accounting of the ways in which Daughter is meeting the essential requirements for Mother's physical health and safety. The Oklahoma trial court properly rejected this argument holding it has exclusive jurisdiction over the guardianship, which renders immaterial Daughter's appointment as guardian in Texas.[3]

¶ 29 Daughter's final argument on appeal is that various omissions and errors render the Oklahoma guardianship void.[4] Daughter cites *Guardianship of Deere,* 1985 OK 86, 708 P.2d 1123 and *In Re Estate of Davis,* 2006 OK CIV APP 31, 132 P.3d 609, for the proposition that failure to strictly comply with guardianship statutes invalidates the appointment of a guardian. In *Deere,* the trial court refused to grant a continuance to permit the prospective ward to appear

---

**3.** The Oklahoma trial court further reasoned Son's appointment as Mother's special guardian, which took effect December 19, 2006, had remained in effect ever since because, by requesting continuances and stays of his application for general guardianship, Daughter effectively waived the thirty-day expiration date of the special guardianship. Thus, it ruled there was no need for a guardian of Mother's person when the Texas trial court issued its order appointing Daughter to that position March 8, 2007, because Son was acting as Mother's guardian at that time.

**4.** We will not address the majority of the alleged errors Daughter itemizes because they concern applications and orders relating to Son's special guardianship of Mother's person and estate, none of which Daughter appealed.

personally, accompanied by his lawyer, at the hearing at which he was determined to be incompetent and in need of a guardian. The Supreme Court held the trial court's failure to grant a continuance was an abuse of discretion and a denial of due process that ignored the safeguards of 58 O.S. §§ 851, 852 and the guarantees of the United States and Oklahoma constitutions. *Id.*, ¶ 5, 708 P.2d at 1125. In *Davis*, the trial court appointed a cousin of the proposed ward to be her guardian even though the cousin was not a resident of Oklahoma, and thus unqualified to serve as guardian under the plain language of 30 O.S. 2001 § 4–104. In addition, the trial court failed to specify specific limitations imposed on the partially-incapacitated ward and make determinations regarding whether she should retain the capacity to vote, serve on a jury, operate a motor vehicle, make personal medical decisions, enter into contracts, grants conveyances, or make gifts of property as set forth in 30 O.S.2001 § 3–113. On appeal, another division of this Court held "[s]ince guardianship proceeding are regulated by statute, failure to strictly comply with the statutory mandate *may* invalidate the appointment of the guardian." *Id.*, ¶ 25, 132 P.3d at 614.

¶ 30 Unlike the foundational concerns at issue in *Deere* and *Davis*, the alleged errors and omissions to which Daughter refers in the Oklahoma trial court's order appointing Son general guardian of Mother's person and estate amount neither to a denial of Mother's due process rights (not only was Mother present at the January 11, 2007 hearing but testified as well) nor a direct contravention of the statutory parameters regarding who may serve as a guardian in Oklahoma (it is undisputed Son is an Oklahoma resident). Rather, they concern clerical errors or matters incidental to the elemental components of the guardianship, and are thus insufficient to invalidate it.[5]

¶ 31 As a matter of law, the Oklahoma trial court had exclusive jurisdiction over the matters at issue in the guardianship because Mother is a resident of Oklahoma and her estate is in Oklahoma. By clear and convincing evidence, it found Mother to be a person incapacitated by reason of dementia whose health and safety is in imminent danger of being seriously affected unless action is taken to protect her; who is subject to undue influence, overreaching, deception, and general exploitation of her financial resources unless protection is granted for her benefit;

---

**5.** In summary, Daughter alleges the Oklahoma general guardianship is void because Son violated 30 O.S.2001 § 3–110(A)(2)(b) by failing to provide notice of the January 11, 2007 hearing to Mother's attorney *ad litem* in Wilbarger County even though his appointment was limited to the Texas action and Mother had her own Oklahoma counsel; the notice of hearing for appointment of guardian filed December 21, 2006 contained a typographical error regarding the date; Mother was not present at the March 28, 2007 hearing on Daughter's motion to dismiss or at the May 30, 2007 hearing on general guardianship in supposed violation of 30 O.S. § 3–106(B) despite the fact that Mother already had testified in the case, the proposed ward's presence may be waived for good cause shown, Mother's Oklahoma attorney attended and participated in both hearings, and Daughter had removed Mother from Oklahoma just prior to the May 30th hearing; the general guardianship order included Son's name but not his address in alleged violation of § 3–113(A)(2); the Oklahoma trial court failed to set forth Son's authority to change Mother's place of abode under § 3–113(A)(4) and failed to determine whether Mother retains sufficient capacity to vote, serve as juror, operate a motor vehicle, make personal medical decisions, or grant conveyances under § 3–113(B).

In addition, despite the fact the Oklahoma trial court addressed all of the following issues in detail in its orders, Daughter alleges the general guardianship is void because it failed to determine "on the record" pursuant to 30 O.S. 2001 § 3–111(A) and (B) the essential requirements for Mother's health and safety and the skills and knowledge necessary to meet those requirements; the nature and extent of Mother's incapacity; whether by clear and convincing evidence Mother is incapacitated or partially incapacitated; and the facts and reasons supporting its decision not to impose a less restrictive alternative than appointing a guardian. Similarly, despite the existence of the Trust, Daughter alleges the general guardianship is void under § 3–111(A)(3) because the Oklahoma trial court did not include an estimated value of Mother's intangible personal property, and failed to determine the type and amount of Mother's financial resources, and the essential requirements, skills, and knowledge necessary to manage those resources. Again, despite the existence of the Trust, she further insists Son's failure to file a proposed plan for managing Mother's financial resources under § 3–122 and to take an inventory of her estate under § 4–301 render the guardianship void.

for whom no less restrictive an alternative than a general guardianship of her person and property will ensure that she receives the necessary care and assistance; and that Son is qualified to serve as her general guardian. We affirm its decision in all regards.

¶ 32 AFFIRMED.

BUETTNER, P.J., and BELL, J., concur.